By the Court.
The Vincent Hardware & Lumber Company, in December, 1918, filed its complaint with the Public Utilities Commission against the plaintiff in error, an Ohio railroad corporation, alleging that the freight rates charged it by the company as a common carrier were unjust and unreasonable. It alleged that the railroad is owned and operated by The Cleveland Stone Company, a corporation engaged in the manufacture of grindstones, with works along the line of thé road, and that the road is operated for the benefit of said Stone Company, unjustly discriminating against the complainant and other shippers of freight.
The defendant in its answer denied that its rates are unjustly discriminatory or unjustly preferential, and denied that it is owned and operated by the Stone Company, but admits that the Stone *30 Company owns or controls a controlling interest in the stock of the company; it denies that the railroad is operated for the benefit of the Stone Company in preference to other shippers, but admits that it is the principal shipper over the road. But it asserts that the amount of revenue derived is no more than sufficient to pay the cost of operation and a fair return on its investment, and that any decrease in rates would be a confiscation in violation of the constitution.
On the hearing before the commission that body rendered its decision in favor of the complainant, and ordered the rates reduced from $45 minimum weight 50,000 pounds to $25 per car, and freight in less than car lots from fifty cents per hundred to twenty-five cents per hundred, with the minimum charge of fifty cents. This proceeding is brought to reverse the order of the commission.
The railroad is 10.2 miles long, running from Moore’s Junction to Vincent. It was formerly part of the Marietta, Cleveland & Columbus railroad, which was sold at receiver’s sale, plaintiff in error having afterwards acquired title to this part by purchase in June, 1918, when it established the rates complained of.
The testimony shows that the country through which the road runs is a farming community, and along the road are one large village and several smaller ones; that the topography of the country is hilly and the public highways in winter muddy and almost impassable. A number of witnesses were called by the complainant, among whom one Secrest, who had had considerable experience in *31 the railroad business as a railroad auditor, telegraph operator, and traffic expert. His testimony is frank and convincing to the effect that the rates fixed by the company were prohibitive, and that the shippers to whom they in practice applied could not do business while such rates prevailed. He gave it as his opinion that if a decreased rate were established the business would increase..
There was testimony by other witnesses as to the close and intimate association between the Stone Company and the plaintiff in error and as to the apparent control of the latter by the former in its own interests. There was testimony that the present rates were unreasonable and excessive and that practically no freight business would be done hereafter for shippers along the company’s line.
The evidence shows that the section is a large apple-producing section, that considerable quantities of wheat, hay and other agricultural products were raised, but that the rates, fixed were so high as to make the use of the road practically impossible. In fact the main contention of the complainant and its witnesses seemed to be that the plaintiff in error did not desire freight business except such as was given to it by the Stone Company, and the Stone Company frankly says that it would not be in the railroad business at all if it were not for the necessity of hauling its own product. It seems to be clear that the company does not seek the patronage of the general public.
With reference to the contention of the plaintiff in error that a decrease in rates would be con *32 fiscatory, the company offered testimony showing the amount that hád been expended in maintenance and repairs, ‘and that the expenses during a period of the first seven months after the company acquired the road exceeded the income by something like five thousand dollars; but, on the other hand, it was pointed out that a large part was spent for permanent improvements and betterments of a permanent nature. This was necessary and was done for the purpose of putting the roadbed in a condition to operate, so that the.owner of the railroad’s stock might haul its own product and incidentally the business of the public. The reduction made by the commission while considerable leaves the rate still higher than the average rate in effect on most roads for a similar movement for a like distance.
The commission was of the opinion that the adoption of the lesser rate would lead to an increase of the business of 'the company, and that a flat rate of $25.00 per car, regardless of distance moved or The weight or contents, would be and is a compensatory rate, but it retained jurisdiction of the case and provided that if after a trial under these rates for a period of one year they do not prove to be remunerative it will on application again take the matter up for further consideration, based on the results of actual operation.
From the whole record we think it is apparent that much more business can be done at but a small increase in the present expense. But if actual experience after a fair trial shows the rates to be insufficient the proper order can be made on the hearing of a new application.
*33 We are not able to find that the order made in this case by the commission was unreasonable or unlawful. The railroad having been constructed by a railroad company, organized under the laws of the state with authority to exercise the sovereign power, and operated as a common carrier, it became impressed with a public interest. A purchaser thereof, either at judicial sale or otherwise, has no right to operate it for its own private purpose or for the purpose of those with whom it may privately contract to the exclusion of the public. The State, ex rel. McGhee, Attorney General, v. The Black Diamond Co., 97 Ohio St., 24.
Of course when operated as a common carrier it is entitled to just compensation, and when the locality through which it runs is sparsely settled, and the demand and necessity for transportation small, these matters must be taken into consideration and more than the rate customary in more favorable districts allowed while the common carrier is operated.

The order is affirmed.

Nichols, C. J., Jones, Matthias and Johnson; JJ., concur.
Merrell, J., not participating. .